*v. N. J. Real Estate Comm'n*, 53 *N. J. Super.*, 60, 62 (App. Div. 1958).

In making its determination, a crucial question before the Commission was, of course the credibility of appellant. The basic issue in that determination was whether appellant knew of the existence of the second contract providing for the payment of $120,000, which was executed between the straw man and the ultimate purchaser, and if he did, whether or not there was a duty to disclose this to his principal, the original owner who had executed a contract with the straw man for a price of $95,000, the appellant having categorically denied any such knowledge. The Commission resolved the question against defendant, apparently choosing to believe the testimony of Martin Blatt, an attorney who testified that appellant was party to all negotiations and knew he was going to share in the commissions in connection with the second contract. Blatt further testified that he was in fact retained by both the appellant and respondent Feinstein, who was also found guilty of the same charge.

Accordingly, the action of the Commission finding incompetence and unworthiness, and the resultant suspension of license imposed thereunder, is affirmed.

IN RE DEPARTMENT OF INSTITUTIONS AND AGENCIES DECISION ON OBJECTIONS TO PROPOSED DEPARTMENT RULE WHICH WAS PUBLISHED AT 3 NJR 134 UNDER THE MEDICAL ASSISTANCE AND HEALTH SERVICES ACT. NJSA 30:4D-7(n).

Superior Court of New Jersey
Appellate Division

Argued January 9, 1973—Decided March 6, 1973.

40

Before Judges LABRECQUE, KOLOVSKY and MATTHEWS.

*Mr. William H. Sheil* argued the cause for appellant Essex County Welfare Board (*Mr. Joseph E. Cohen*, attorney).

*Mrs. Virginia Long Annich*, Deputy Attorney General, argued the cause for respondent Department of Institutions and Agencies (*Mr. George F. Kugler, Jr.*, Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

LABRECQUE, P. J. A. D. The Commissioner of the Department of Institutions and Agencies (Commissioner) gave notice of his intention to promulgate a rule governing payments to county welfare boards for eligibility investigations pursuant to the Medical Assistance and Health Services Act (Medicaid Act), *N. J. S. A.* 30:4D–1 *et seq.* Objections to the proposed rule were received and a hearing was held before the Acting Commissioner of the Department, in which those objecting to the proposed rule participated. On January 21, 1972 the Acting Commissioner filed his decision in which he concluded that the proposed rule complied with the letter and intent of the applicable statutes and should be adopted. It was formally adopted on February 2, 1972 as *N. J. A. C.* 10:49–1.1. The present appeal by the Essex County Welfare Board (Board) followed.

Appellate raises two points as follows: (1) "The reimbursement for investigating and determining eligibility provisions of *N. J. A. C.* 10:49–1.1 violate the intent of the medical assistance program (*N. J. S. A.* 30:4D–1 *et seq.*) and therefore were beyond the power of the Department of Institutions and Agencies to promulgate"; (2) "The regulation in question conflicts with 42 *U. S. C. A.* Section 1396(a)(2) [1396a(a)(2)] and therefore is void." We find them to be without merit.

Pursuant to Title XIX of the Social Security Act, which enabled the states to take advantage of partial federal funding of a state administered medical assistance program, 42 *U. S. C. A.* § 1396 *et seq.,* the New Jersey Legislature enacted the act setting up Medicaid, *L.* 1968 *c.* 413, *N. J. S. A.* 30:4D–1 *et seq.* The intent of the act was stated to be:

It is the intent of the Legislature to make statutory provision which will enable the State of New Jersey to provide medical assistance, insofar as practicable, on behalf of persons whose resources are determined to be inadequate to enable them to secure quality medical care at their own expense, and to enable the State, within the limits of funds available for any fiscal year for such purposes, to obtain all benefits for medical assistance provided by the Federal Social Security

Act as it now reads or as it may hereafter be amended, or by any other Federal act now in effect or which may hereafter be enacted. [*N. J. S. A.* 30:4D–2]

The Department of Institutions and Agencies was designated as the single state agency to administer the act. *N. J. S. A.* 30:4D–3 and 5.

Title XIX makes appropriations available to those states which submit and have approved by the Secretary of Health, Education and Welfare plans for medical assistance which meet federal standards. 42 *U. S. C. A.* § 1396. One requirement is that the state plan include as persons eligible for medical assistance those who are recipients of aid under the federally established "categorical assistance" programs, *i. e.,* (1) old age assistance, 42 *U. S. C. A.* § 301 *et seq.;* (2) assistance for the permanently and totally disabled, 42 *U. S. C. A.* § 1351 *et seq.;* (3) assistance for the blind, 42 *U. S. C. A.* § 1201 *et seq.,* and (4) assistance for dependent children, 42 *U. S. C. A.* § 601 *et seq.* In compliance therewith, the New Jersey Medicaid Act includes in the definition of a "qualified applicant" for Medicaid a resident of the State who it is determined needs medical care and services as provided under the act, and who is a recipient of old age assistance, *N. J. S. A.* 44:7–1 *et seq.,* assistance for the permanently and totally disabled, *N. J. S. A.* 44:7–38 *et seq.,* assistance for the blind, *N. J. S. A.* 44:7–43 *et seq.,* or assistance for dependent children, *N. J. S. A.* 44:10–1 *et seq., N. J. S. A.* 30:4D–3(f).

The federal act also requires that the state medical assistance plan:

[P]rovide for financial participation by the State equal to not less than 40 per centum of the non-Federal share of the expenditures under the plan with respect to which payments under section 1396b of this title are authorized by this subchapter; and, effective July 1, 1969, provide for financial participation by the State equal to all of such non-Federal share or provide for distribution of funds from Federal or State sources, for carrying out the State plan, on an equalization or other basis which will assure that the lack of adequate funds from local sources will not result in lowering the amount, dura-

tion, scope, or quality of care and services available under the plan. [42 *U. S. C. A.* § 1396a(a)(2)]

To the extent here pertinent part (b) of section 1396 of 42 *U. S. C. A.* provides for payment by the Federal Government of at least 50% of the cost of actual medical assistance and 75% of the cost of administration, leaving to the state the burden of paying 50% (or less) of the cost of actual health care and 25% of the cost of administration. The New Jersey Medicaid plan provides that state funds be utilized to pay all non-federal costs. As approved on December 31, 1969 the plan provides, in pertinent part:

Under general policies established by the State Board of Control the commissioner is authorized and empowered to issue, or to cause to be issued through the Division of Medical Assistance and Health Services all necessary rules and regulations and administrative orders, and to do or cause to be done all other acts and things necessary to secure for the State of New Jersey the maximum Federal participation that is available with respect to a program of medical assistance, consistent with fiscal responsibility and within the limits of funds available for any fiscal year, and to the extent authorized by the medical assistance program plan; to adopt fee schedules with regard to medical assistance benefits and otherwise to accomplish the purposes of this act, including specifically the following:

\*  \*  \*  \*  \*  \*  *r  \*

n. To contract with and to pay the appropriate county welfare boards for investigating and determining whether applicants for benefits under this act are eligible therefor under the standards prescribed by the department. [*N. J. S. A.* 30:4D-7(n)]

It was in response to inquiries as to the extent of the reimbursement to be made to county welfare boards for eligibility investigations that the Commissioner promulgated the rule here involved. Although there was some uncertainty as to the exact wording of the rule as finally promulgated, it was agreed, subsequent to oral argument, that the rule provides as follows:

The Division of Medical Assistance and Health Services shall represent the Commissioner for purposes of contracting with and paying county welfare boards for investigating and determining whether

applicants for benefits under the Health Services Program are eligible therefor, however, payment to county welfare boards for investigations is limited to payments for investigations made *solely and exclusively* for the purpose of determining eligibility for medical assistance under the Medical Assistance and Health Services Act.

Investigations by county welfare boards for purposes other than described herein are outside the purview of *N. J. S. A.* 30:4D–7n [30:4D–7, subd. n], and consequently not reimbursable under the Medical Assistance and Health Services Act. [Emphasis added]

In rendering his decision upholding the rule the Acting Commissioner held:

Medical assistance provided to individuals under the Health Services Program is merely incidental to and a benefit of one's eligibility as a "categorical assistance" recipient. No application for medical assistance need be made where the applicant applies for a county grant. The investigation made by the county welfare board is made pursuant to already established procedures under applicable welfare legislation and is appropriately funded. Any payment by the Title XIX (Medicaid) agency for this type of work function would not only be a violation of HEW Regulations but would clearly be outside the purview of Chapter 413. The New Jersey Legislature has promulgated legislation under which county welfare boards have established procedures relating to eligibility determinations for categorical assistance programs. Chapter 413 cannot be construed to require payment to county welfare boards from the Title XIX dollars for services which are already required to be performed by the welfare boards pursuant to other applicable legislation. Clearly, therefore, only where the county is acting as agent for the Title XIX agency solely and is not engaged in work activity already required to be performed pursuant to other law can reimbursement be made. Any other interpretation such as proposed by the opponents to the proposed regulation would, I believe, create a subsidy to the counties for work already required, and be clearly contrary to the intent and letter of State and Federal law.

Public welfare in New Jersey is administered through various avenues, the best known of which are the categorical assistance programs referred to above. With respect to an application by a client for a categorical assistance grant, the county welfare board is charged with determining his eligibility for such aid. The overall cost of this program, including both assistance expenditures and administrative overhead, is shared jointly by the federal, state and county

governments. In the case of Medicaid, as noted, such costs are shared only by the federal and state governments. While the Commissioner is given power to contract with county welfare boards for investigating and determining whether applicants for benefits under Medicaid are eligible therefor under the standards prescribed by the Department, no formal contract has yet been entered into, and the rule in question would appear to govern the type of services for which payments are to be made to welfare boards in connection with administration of the Medicaid program.

Appellant cites no case, and we know of none, in which a rule similar to the present one has been invalidated. We are, of course, mindful that the Commissioner's action is entitled to the benefit of the customary rebuttable presumption of validity and regularity afforded to administrative regulations generally. *Motyka v. McCorkle,* 58 *N. J.* 165, 181 (1971).

As we read appellant's point one, its main challenge to the rule under reveiw is predicated upon the contention that since subsection (n) requires the State to reimburse county welfare boards through the Medicaid program for eligibility investigations, and since Medicaid benefits flow from eligibility for categorical assistance, the cost of any investigation to determine eligibility for categorical assistance should be assumed by Medicaid. We disagree. To the extent here pertinent subsection (n) mandates only that the Commissioner pay for investigating and determining whether applicants for benefits "under this act are eligible therefor under the standards prescribed by the department." Categorical assistance recipients are automatically eligible for benefits under the act. *N. J. S. A.* 30:4D–3(f)(1). In a given case, the additional issue of whether an eligible applicant is in need of medical care and services, *N. J. S. A.* 30:4D–3(f), under the standards prescribed by the Department, may or may not require for its resolution an investigation and determination for which the statute calls for payment by Medicaid.

█ The nub of appellant's argument centers upon a group of Medicaid recipients, alleged to number about 1,000, who, although found to be eligible for categorical assistance, receive only a nominal monthly allowance of $9 to $13 for clothing or other incidentals. It is suggested that for the most part these applications are prompted by the desire of the client to qualify for Medicaid. We find no cause to differentiate between a client receiving full categorical assistance and one receiving only partial assistance. In each case the grant made is in accordance with the client's determined needs. Neither type of assistance may be granted without the requisite investigation and determination of eligibility. Such action would be required whether or not the client also intended to seek Medicaid benefits; it is prescribed under Title 44 legislation which preceded Medicaid and is separately and adequately funded. See *East Orange v. McCorkle*, 99 *N. J. Super.* 36, 41–43 (App. Div. 1968). Whether or not an applicant for categorical assistance is seeking a Medicaid grant, the investigation to determine his eligibility for such assistance is not the responsibility of Medicaid. Funds allocated to that program may not be thus diverted. To hold otherwise would be to relieve the counties of payment of their fair share of the cost of categorical assistance.

█ We are likewise convinced that the regulation in question does not conflict with 42 *U. S. C. A.* § 1396a(a)(2). While that section requires that the medical assistance plan be completely funded, the New Jersey plan provides that state funds will be utilized to pay all of the non-federal costs incurred. What we have already said with reference to the asserted conflict between the regulation and *N. J. S. A.* 30:4D–7 likewise applies to this contention.

Our conclusion in this regard is not to be construed as holding that where a single investigation of a welfare client is conducted for the purpose of determining both his eligibility for categorical assistance and for Medicaid, the latter program should not bear the cost of *such portion* of

48

the investigation as is required to be made to determine if the client is in need of the services furnished by Medicaid. It is conceded by the Attorney General in his brief that "If appellant has legitimately incurred expenses not connected with eligibility determinations, which expenses are solely attributable to the administration of the Medicaid program and would not exist in the absence thereof, appellant should submit substantiated requests for reimbursement to the Division. These requests will be reviewed and considered * * *."

By reason of the foregoing, appellant's attack on regulation *N. J. A. C.* 10:49–1.1 must be rejected and the Commissioner's action in adopting it is affirmed.